JAY M. COGGAN (SBN 86107)
jmc@cogganlaw.com
DAVID N. TARLOW (SBN 214050)
dnt@cogganlaw.com
JOSHUA G. BLUM (SBN 249082)
jgb@cogganlaw.com
**COGGAN & TARLOW**
1925 Century Park East, Suite 2320
Los Angeles, California 90067
Telephone (310) 407-0922
Facsimile (310) 407-0923

2008 AUG -8 PM 12:25
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY
FILED

Attorneys for Plaintiff Trevor Russell

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

TREVOR RUSSELL,
Plaintiff,

v.

ASH MANAGEMENT CORPORATION, a California corporation; FOIST, LLC, A California limited liability company; WILLIAM HALES; RON MEIER; ERIC SCHWARTZ,

Defendants.

**CASE NO.:** CV08-05215 DDP (MANx)

**COMPLAINT FOR;**
**1.) BREACH OF CONTRACT**
**2.) FRAUD**
**3.) UNJUST ENRICHMENT**
**4.) RESULTING TRUST**
**5.) CONSTRUCTIVE TRUST**

**JURY DEMAND**

PLAINTIFF ALLEGES:

**THE PARTIES**

1. Plaintiff Trevor Russell (hereinafter "Russell") is, and at all times material hereto was, a resident and a citizen of the State of Mississippi.

2. Plaintiff is informed and believes and thereon alleges, that at all times material hereto, Defendant Ash Management Corporation (hereinafter "Ash") is,

and was, a Corporation being organized and existing under the laws of the State of California, with it's principle place of business located in the County of San Luis Obispo, State of California.

3. Plaintiff is informed and believes and thereon alleges, that at all times material hereto, Defendant Foist, LLC (hereinafter "Foist") is, and was, a Limited Liability Company organized and existing under the laws of the State of California, with it's principle place of business in the County of San Luis Obispo, State of California.

4. Plaintiff is informed and believes and thereon alleges, that at all times material hereto, Defendant William Hales (hereinafter "Hales") is, and was, an individual residing in the County of San Luis Obispo, State of California.

5. Plaintiff is informed and believes and thereon alleges, that at all times material hereto, Defendant Ronald Meier (hereinafter "Meier") ") is, and was, an individual residing in the County of San Luis Obispo, State of California.

6. Plaintiff is informed and believes and thereon alleges, that at all times material hereto, Defendant Eric Schwartz (hereinafter "Schwartz") is, and was, an individual residing in the County of San Luis Obispo, State of California.

7. Plaintiff is informed and believes and thereon alleges, that at all times material hereto, Defendants, and each of them, were the agents, managers, representatives, servants and employees of the remaining co-defendants, and in doing the things herein alleged were acting within the course and scope of such agency and employment, and with the permission and consent of the remaining co-defendants. Furthermore, Defendants, and each of them, are responsible in some manner for the occurrences herein alleged.

8. Plaintiff is informed and believes and thereon alleges that Defendants Hales, Meier, and Schwartz are the dominating shareholders of Defendants Ash and Foist.

9. Defendants Hales, Meier, and Schwartz are liable for the acts of

Defendants Ash and Foist as alleged in this complaint as the alter-egos of Defendants Ash and Foist. Plaintiff is informed and believes and thereon alleges, that recognition of the privilege of separate existence would promote injustice because Defendants Hale, Meier, and Schwartz in bad faith so dominated and controlled Defendants Ash and Foist by diverting funds and other assets of Defendants Ash and Foist to other unintended corporate uses, and used Defendants Ash and Foist as a mere shell, instrumentality, or conduct for other ventures, and contracted with Plaintiff with the intent to avoid performance by use of corporate entities Ash and Foist as a shield against personal liability.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over subject matter of this complaint pursuant to 28 USC §1332.

11. Venue in the is action is proper within the Central District of California pursuant to 28 USC Sections 1391 (a) and (c) as Defendants are residents of, and regularly transact business in this district.

12. The amount in controversy in this matter exceeds $75,000.00.

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DEFENDANTS, AND EACH OF THEM

13. Plaintiff incorporates paragraphs 1 through 12, inclusive as though fully set forth at this place.

14. Prior to December of 2005, Plaintiff Russell had been working as a key employee in a bar in Oxford Mississippi called The Levee.

15. In or about December of 2005, Defendant Hales cold-called Plaintiff and stated that he had heard that Plaintiff was looking to acquire investors for a bar in Oxford Mississippi. Hales explained to Plaintiff on the phone that he himself was looking to open a bar in Oxford Mississippi, near the University of

Mississippi. Hales explained to Plaintiff that he and Ash had opened several successful bars in San Luis Obispo, California near Cal Poly, and had just recently opened a bar in Lincoln, Nebraska. In this telephone discussion, Hales represented to Plaintiff that if he became aware of any opportunity to acquire a bar in Oxford, Mississippi, that he would invest the funds of Ash Management, a company which he controlled, in the purchase and operation of said bar, and that Plaintiff would become the managing partner of the bar with Ash Management.

16. In or about February of 2006, Plaintiff Russell was approached by the owner of The Levee and asked if he wished to buy the bar. Plaintiff immediately contacted Hales in San Luis Obispo and advised him of this opportunity, and was requested by Hales to fly to San Luis Obispo to pursue this opportunity.

17. In or about March of 2006, Plaintiff did fly to San Luis Obispo, and met with Hales, Meier, and Schwartz, the members of Defendant Ash to discuss the purchase of the bar. Defendants, and each of them, advised Plaintiff that if the bar looked like a good purchase, that they would invest their funds as capital in the purchase of said bar, and that Plaintiff would receive a seven percent (7%) equity stake in the bar for what is commonly known as "sweat equity," and that Plaintiff would further receive a car paid for by the business operating the bar, four thousand dollars ($4000.00) per month in base salary plus his equity interest, medical insurance, and that they would buy a home and provide it for him to reside in rent free while he was the managing partner of the bar.

18. Plaintiff invited Hales, to come to Oxford, Mississippi to meet with the seller of The Levee, and to look at any books and records that Hales believed necessary for Ash to make a determination whether to proceed with the purchase. Hales did come to Oxford, Mississippi in April 2006, spoke with the seller of the bar, and agreed to purchase the bar for the bar's asking price. While in Mississippi, Hales reiterated on behalf of Ash that the deal offered to Plaintiff while in San Luis Obispo would be the deal under which they would purchase, and

then operate the bar.

19. After said meeting, in anticipation of the purchase of The Levee, Plaintiff established a Mississippi company to purchase the bar, and began the process of applying for a liquor license to operate the bar. Plaintiff further ceased seeking any other investors to facilitate his purchase of The Levee.

20. Plaintiff had been looking to purchase a bar or restaurant in Oxford, Mississippi to create a career for himself, and to this end had established substantial contacts with community leaders and businessmen, and acquired a reputation for honesty and forthrightness, and as someone that one would wish to do business with. It was as a result of this relationship that Plaintiff was even offered the ability to purchase The Levee in the first place.

21. In or about June 2006, Defendant Hales visited Oxford with Duane and Tyson Davis, who were introduced to Plaintiff as two people who would be investing in The Levee. This was the first time that Plaintiff was advised that other investors would be involved in the purchase of The Levee, and in fact was advised by Hale that these investors would be investing the money in Ash, and that Ash would then be utilizing it's funds to capitalize the purchase of the bar. As a result, Plaintiff did not protest, and did not consider it to be any sort of a problem. Between July and August of 2006, funds arrived in Mississippi for the purchase of The Levee, however, rather than arriving from Ash directly, they arrived in traunches from different individuals, including Duane and Tyson Davis, and from Defendant Foist on behalf of Defendant Ash.

22. Based upon the arrival of funds into the new Mississippi company that would be utilized to operate the bar, Plaintiff applied for a liquor license, and on September 13, 2006, a liquor license was issued for the operation of The Levee with Plaintiff having to sign on individually as the applicant,

23. Immediately after the acquisition of the liquor license, and the completion of the purchase of the bar, Plaintiff began requesting his car, rental

home, and paperwork reflecting his seven percent (7%) ownership in the bar.

24. Almost immediately after the opening of the bar, Defendants Hales Meier, and Schwartz arranged for funds generated from the operation of The Levee to be distributed from The Levee checking account to Duane and Tyson Davis, and further began taking funds from The Levee operational account for what Plaintiff was advised was the debt service for the loan of the money used to purchase the bar. In October of 2006, it was the first time that Plaintiff came to realize that rather than investing by way of capital in the bar, Ash, and the remaining Defendants controlling Ash and Foist had actually loaned all the funds to the bar, and set it up in such a manner that all profits from the operation of the bar would in essence be absorbed in debt service and bonuses to the individual investors that they had arranged to invest in the purchase of The Levee.

25. Throughout 2007, and through June, 2008, Plaintiff never received the car, or the home, and at various times was required to take less than the $4000.00 per month in fees to manage The Levee due to the siphoning off of funds by Defendants, and each of them.

26. Throughout this period of time, Plaintiff not only demanded the compensation package promised him, but demanded to receive evidence supporting his seven percent (7% ) ownership interest in the business. Defendants Hale, Meier, and Schwarz consistently represented to Plaintiff that as soon as the bar started drawing in additional funds that they would provide him with his original compensation package, and further kept promising him the documents reflecting his ownership. In June 2008, Defendant Hales advised Plaintiff Russell that he and Ash had sold off a certain portion of The Levee which was commonly known as Toddy's to Griffin Tanner. The Levee was divided into two portions, one being for persons both under 21 and over 21 and controlled by wristbands and the Toddy's portion which was only adults over 21 could have entry to. Throughout Plaintiff's management of the entire operation, all of the revenue from

both portions of the Levee were treated as one, and managed and operated by Plaintiff, and all operating expenses were paid from the same checking account. Plaintiff vehemently protested that Hales and Ash could sell a portion of the ongoing business without his permission, as such sale would reduce Plaintiff's equity position in the operation, and also the available revenue for income and profit. Additionally, Hales advised Plaintiff that Griffin Tanner would be coming to manage the portion of The Levee, known as Toddy's, however such information additionally concerned Plaintiff as Plaintiff had personal information that Tanner had a history that would have prevented him from securing a liquor license, or even operating a bar.

27. Things finally came to a head in June of 2008 when Plaintiff was presented with documentation to reflect his ownership interest in the bar, however, for the first time, he was presented with a promissory note to sign claiming that in actuality he had borrowed the money from the Hales' Family Trust to purchase the shares, and he was required to pledge those shares for repayment of the promissory note. Notwithstanding the fact that these documents did not accurately reflect the facts, Plaintiff signed the documents to avoid a confrontation immediately at that time, and began discussions with Defendants, and each of them, for the purpose of trying to buy them out. However, the financials of the bar were so poor by this time due to the siphoning of funds by the Defendants, and each of them, that it became quickly obvious to Plaintiff that he would not be able to find someone capable of paying the funds necessary to buy out Defendants.

28. Plaintiff has performed all conditions on his part to be performed, or has been excused from such performance.

29. As a proximate result of the breach of contract by Defendants, and each of them, Plaintiff has sustained substantial compensable losses, the exact nature and extent of which is currently unknown to plaintiff, but include such items as, housing, car, salary, and equity in the bar, in an amount the Plaintiff estimates

to be in excess of $500,000.00.

**SECOND CAUSE OF ACTION FOR FRAUD AGAINST DEFENDANTS, AND EACH OF THEM**

30. Plaintiff incorporates paragraphs 1 through 12 and 14 through 28, as though fully set forth at this place.

31. In or about March, 2006, in San Luis Obispo California, Defendants, and each of them, orally misrepresented to Plaintiff that Defendant Ash would invest by way of capital sufficient funds to purchase The Levee in Oxford Mississippi, and that Plaintiff would be give seven percent (7%) equity in the bar for what is otherwise known as "sweat equity", and would further be given a monthly salary of $4000.00, plus a car, medical insurance, and a home in which to live while operating the bar.

32. At the time that said misrepresentations were made to Plaintiff, Defendants and each of them knew that they were false, and the truth was in fact that Defendant Ash, and it's individual owners, did not have the funds necessary to invest in the purchase of said bar, but rather were planning on going out and acquiring third-party funding, and rather than capitalizing the bar, were going to loan the funds to the bar, and use the bar revenue as a method of simply funneling cash out of the bar in a tax-free form as return of loan while building up equity in the project. They further never intended to provide Plaintiff any type of long term security by way of equity ownership in the bar, or funds necessary to rent Plaintiff a home, buy him a car, and provide him medical insurance, and provide him the steady income as promised.

33. Defendants, and each of them, made said representations to the Plaintiff with the intent to induce Plaintiff into offering them what was then his opportunity to purchase The Levee in Oxford Mississippi, and with the intent to induce Plaintiff to transfer said right to Ash for what would effectively be no

capitalization, and a system by which would force Plaintiff to abandon all affiliation with The Levee.

34. Plaintiff justifiably relied upon the misrepresentations of Defendants, and each of them and that Defendants, and each of them, represented to Plaintiff that they were a substantial company, provided him documentation that they were the owners of bars in San Luis Obispo and Lincoln Nebraska, and that they had the sufficient wherewithal to fund a capitalized purchase of the bar.

35. It was only after the bar was purchased, and Plaintiff had lost his opportunity to find appropriate capitalization, that he became aware of the true intent and purpose of Defendants, and each of them, and at a point when it was too late for Plaintiff to rectify the scenario. In fact, the bar was so undercapitalized by Defendants, and each of them, that at one point Plaintiff had to put twenty-five thousand ($25,000.00) dollars of his own money in to ensure the bar would remain open when repairs were necessary to avoid code violations.

36. As a proximate result of the fraud and deceit of the Defendants, and each of them, Plaintiff has suffered substantial compensable losses in an amount not yet fully ascertained, including mental suffering, loss of reputation, loss of revenue, loss of equity in the bar, rental car, rental home, and medical insurance in an amount which Plaintiff estimates to be excess of one million ($1,000,000.00) dollars.

37. In doing the acts herein alleged, Defendants, and each of them, acted fraudulently, intentionally, maliciously, and with a conscious disregard of the economic consequences and rights of Plaintiff, which would justify an award of punitive and exemplary damages according to proof at time of trial.

**THIRD CAUSE OF ACTION FOR UNJUST ENRICHMENT AGAINST DEFENDANTS, AND EACH OF THEM,**

38. Plaintiff incorporates paragraphs 1 through 12, 14 through 28, and

paragraphs 31 through 36, as though fully set forth at this place.

39. Defendants, at all times material hereto, knew that Plaintiff had given up other opportunities to purchase The Levee, that Plaintiff had utilized some of his own money to operate the bar, and had done so to acquire his equity interest in the bar, and that accordingly he had an expectation of receiving substantial profits from the revenue and equity in the bar.

40. Plaintiff is informed and believes, and thereon alleges that as a direct and proximate result of the acts of Defendants, and each of them, as more fully set for hereinabove, Defendants have acquired the ownership of The Levee; something which they could not have done but for Plaintiff, and by converting Plaintiff's interest in The Levee, Defendants have been unjustly enriched in an amount in excess of $100,000.00, according to proof at time of trial.

41. Accordingly Plaintiff Russell requests an Order of this Court requiring Defendants, and each of them, to disgorge either a seven percent ownership interest in the bar, or their unjustly enriched profits in The Levee to Plaintiff Russell.

**<u>FOURTH CAUSE OF ACTION FOR RESULTING TRUST AGAINST DEFENDANTS, AND EACH OF THEM,</u>**

42. Plaintiff incorporates paragraphs 1 through 12, 14 through 28, and paragraphs 31 through 36, as though fully set forth at this place.

43. Plaintiff Russell is informed and believes, and thereon alleges, that Defendants and each of them, have received either an ownership interest in, or a right to receive proceeds from, The Levee.

44. At all times material hereto, Plaintiff Russell was entitled to a seven percent ownership interest in The Levee, and the profits from its operation.

45. Plaintiff Russell requests that this Court impress a Resulting Trust upon The Levee, and on any proceeds from the operation of The Levee to the

extent that Plaintiff is entitled to seven percent (7%) of the ownership of said bar, and the profits from said bar.

**FIFTH CAUSE OF ACTION FOR CONSTRUCTIVE TRUST AGAINST DEFENDANTS, AND EACH OF THEM,**

46. Plaintiff incorporates paragraphs 1 through 13, 15 through 29, and paragraphs 32 through 36, as though fully set forth at this place.

47. At all times material hereto, Plaintiff Russell was entitled to a seven percent (7%) ownership interest in The Levee, and the profits from it's operation

48. As a direct and proximate result of the fraud of Defendants, and each of them, Defendants, and each of them have acquired Plaintiff Russell's interest in and to The Levee, and the profits therefrom.

49. Plaintiff Russell requests that this Court impress a Constructive Trust upon The Levee, and on any proceeds from the operation of The Levee to the extent that Plaintiff is entitled to seven percent of the ownership of said bar, and the profits from said bar.

**WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS;**

**On The First Cause of Action Against Defendants And Each of Them;**

1. For compensatory damages in excess of $500,000.00, proof of which will be offered at time of trial;

**On The Second Cause Of Action Against Defendants, And Each Of Them;**

2. For compensatory damages in excess of $1,000,000.00, proof of which will be offered at time of trial;

3. For punitive and exemplary damages according to proof at time of trial;

**On The Third Cause Of Action Against Defendants, And Each Of Them;**

4. For compensatory damages in excess of $100,000.00, according to proof at time of trial;

**On The Fourth Cause Of Action Against Defendants, And Each Of Them;**

5. That the Court impress a Resulting Trust upon The Levee and any proceed and profits from the operation of The Levee bar;

**On The Fifth Cause Of Action Against Defendants, And Each Of Them;**

6. That the Court impress a Constructive Trust upon The Levee and any proceed and profits from the operation of The Levee bar;

**On All Causes Of Action;**

7. For costs of suit incurred herein;

8. And for all other relief as the court may deem just and proper.

DATED: August 8, 2008 COGGAN & TARLOW

By: JAY M. COGGAN
Attorneys for Plaintiff Trevor Russell

**JURY DEMAND**

Plaintiff demands a jury trial in this action.

DATED: August 8, 2008 COGGAN & TARLOW

By: JAY M. COGGAN
Attorneys for Plaintiff Trevor Russell

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

**CV08- 5215 DDP (MANx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
**312 N. Spring St., Rm. G-8**
**Los Angeles, CA 90012**

[ ] **Southern Division**
**411 West Fourth St., Rm. 1-053**
**Santa Ana, CA 92701-4516**

[ ] **Eastern Division**
**3470 Twelfth St., Rm. 134**
**Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

Jay M. Coggan (SBN 86107) jmc@cogganlaw.com
David N. Tarlow (SBN 214050) dnt@cogganlaw.com
Joshua G. Blum (SBN 249082) jgb@cogganlaw.com
Coggan & Tarlow
1925 Century Park East, Suite 2320
Los Angeles CA 90067 Phone (310)407-0922

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVOR RUSSELL, Plaintiff, PLAINTIFF(S) v. Ash Management Corporation, a California Corporation; Foist, LLC, A California limited liability company; William Hales; Ron Meier; Eric Schwartz, DEFENDANT(S). | CASE NUMBER CV08-05215 DDP (MANx) <br> **SUMMONS** |

TO: DEFENDANT(S): Named Above

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ ______________ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Jay M. Coggan, whose address is Coggan & Tarlow 1925 Century Park East, Suite 2320, Los Angeles CA 90067. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: AUG - 8 2008

By: NATALIE LONGORIA
Deputy Clerk

(Seal of the Court)

1198

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Trevor Russell, an individual

**DEFENDANTS**
Ash Management Corporation, A California Corporation; Foist, LLC, A California limited liability company; William Hales; Ron Meier, and Eric Schwartz.

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Jay M. Coggan (SBN 86107) jmc@cogganlaw.com
Coggan & Tarlow, 1925 Century Park East, Suite 2320, Los Angeles CA 90067
Phone (310) 407- 0922

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No

☑ **MONEY DEMANDED IN COMPLAINT: $** 1,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Contract, Fraud, Unjust Enrichment, Resulting Trust, Constructive Trust, 28 USC Sec.1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☑ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

TORTS
PERSONAL PROPERTY
☑ ~~370 Other Fraud~~
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition

FORFEITURE / PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: CV08-05215

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): ______

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): ______

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | State of Mississippi |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Luis Obispo | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Luis Obispo | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): [signature] **Date** August 7, 2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |